Could the clerk call the next case please? Thank you. Mr. Stephens, good morning. Would you approach? Good morning, your honors. My name is Frank Stephens. I represent State Farm Mutual Automobile Insurance Company. As you know from the briefs in this case, the issue in this case is whether five policies of automobile insurance issued by State Farm to Michael and Karen Damptz can be aggregated to provide them with $500,000 of underinsured motorist coverage for Michael's accident. The lower court, the trial court in this case, found that although State Farm's policy language, the anti-stacking language, was unambiguous, the court found that for public policy reasons, the policies should stack. Is that contrary to the two Supreme Court cases? Absolutely. If there's no ambiguity, you don't go into the construction rules? Absolutely, your honor. And those cases, as you well know, are the Grayshack case, Grayshack v. Illinois Farmers, and Mankey v. Country Mutual. Mankey is a 1980 case. It changed the whole complexion, all the rules regarding stacking in Illinois. It overruled a series of cases back from the early and mid-'70s and came to a new conclusion, which is that an insurance company can, with unambiguous policy language, prevent stacking and does not violate public policy. Shortly after the Mankey decision, the Illinois legislature changed the statute, 14382, and added a provision that allows insurance companies to preclude stacking. It says that an insurance company that issues multiple policies or multiple coverages under one policy can include a clause that limits its liability to the amount of coverage that provides the highest amount of coverage. So the Illinois legislature codified Mankey, and Grayshack acknowledges that, and they state that that expression by the Illinois legislature, 14382, is the best expression of the public policy of the state. There is no public policy against precluding stacking. In this case, now the trial court here recognized the lack of ambiguity, but when they looked at the five policy premiums that applied a premium rule, indicating that public policy could reach to this occurrence, this transaction. You're correct, and I would offer this. It appears from the trial court's decision that the trial court was essentially relying on the appellate court decision in Grayshack, where the appellate court engaged in the same type of analysis that the trial court did in this case. But when you read the Supreme Court decision in Grayshack, they spend two pages of their opinion talking about what the appellate court did and shoot down every single argument, and there's four different arguments the appellate court addressed, and they reject every legal analysis offered by the appellate court. In this case, it appears that the trial court relied on the analysis of the appellate court in Grayshack and not the analysis of the Supreme Court. The Supreme Court in Grayshack said that the second policy issued to the Grayshacks provided coverage for non-family members when they occupied the second car. That is exactly the situation here. The State Department issued five policies. Each of these policies provided coverage for non-family members when they occupied that specific car, and without that provision, there's no coverage for a non-family member. So it has identical coverage that the Supreme Court found so significant in ruling in favor of the insurance company in the Grayshack case. There's no way to distinguish that. Well, they were paid for five policies and didn't seem to receive much of it. The premium that they paid for these coverages was for three of the policies was for $7 in some sense. In Grayshack, the premium was $20, a little bit over $20. Although it's not stated in Grayshack, I assume that they were paying for a yearly premium for Grayshack with Illinois farmers. Their state farms policies renew on a six-month basis. But they're actually paying, even so, even if that's the situation, they're paying substantially less in this case than the policyholders did in Grayshack. I don't think that this court or any court wants to get engaged in an analysis on a case-by-case basis as to what would be the appropriate premium charge. Insurance companies have actuaries to determine what the premium charge should be for their coverages. And I think it would be a tremendous burden on the trial courts and the appellate courts of the state to look at each of these alleged stacking cases and then try to determine whether $7.60 is an appropriate premium for underinsured mower discrimination. I don't think the courts are equipped to do that, and I don't think they want to do that. I think you don't need to go any farther than look at the Grayshack case and say it is not a violation of public policy to charge identical premiums on multiple policies where the second and other policies provide coverage for non-family members when they occupy the specific car identified under the policy. That's exactly what State Farm did. That point, frankly, was lost on the trial court. The trial court never acknowledged that in the court's decisions. And that's exactly what makes this case indistinguishable from Grayshack. There's a second reason why State Farm is entitled to judgment. There's a series of cases, which starts with a case called Copinus v. State Farm, which is a case that comes from this district, which says that when you are making a claim for underinsured mower discoveries under multiple policies, the insurance company is entitled to set off against underinsured coverage on each policy the amount paid by the tortfeasor. In Copinus, the coverages were 100 and the amount paid by the tortfeasor was 50, and this court held that the insurance company in that case, State Farm, was entitled to deduct $50,000 from each policy. A few years later, the first district in Jones v. Country Mutual, which is cited in our briefs and was cited in the lower court, had a situation where the underinsured coverage was $100,000, the tortfeasor's insurance was 100 paid to the insureds, and the first district held, following Copinus, that the insurance company was entitled to set off $100,000 against each of the underinsured coverages under the multiple policies, resulting in zero coverage under each of the policies. When those policies were then stacked, they were stacked for zero amount of coverage because it was zero on each of the policies, and together they provided zero coverage. That's the situation here again, too. In this case, Mr. and Mrs. Damps were paid $100,000 by the tortfeasor. Each of their policies contains underinsured coverage of $100,000. By statute, by 143A2, the insurance company, State Farm, was entitled to set off against the policies $100,000 paid by the tortfeasor's insurance company. That means that there's $0 in coverage under each of the five policies. When the five policies stack, they provide zero coverage. So for both of those reasons, the fact that the anti-stacking language in the State Farm policies is even found by the trial court as unambiguous, it does not violate public policy, and for the second reason that when the setoff is applied against each of these policies, each of these policies provides zero amount of coverage, for both of those reasons, State Farm was entitled to judgment in the trial court. Are there any questions? Thank you, Mr. Stevens. Thank you very much. Thank you. Mr. Monaco, good morning. Good morning. Good morning, Your Honors. May it please the Court. In this case, this is not a case about whether or not the anti-stacking statute in and of itself violates public policy. That's not the case. It's the statute. We agreed to that. It's whether or not the way in which State Farm applied their contracts, the contracts in this case, which is a case-specific analysis, whether or not what they did violated public policy. And that's what the court found. The trial court found that the State Farm violated public policy when they overreached, charging too much for too little, essentially. What they did was they charged five premiums for coverage that they could never receive. Now, Your Honor brought up a point about they didn't get very much for what they asked for. That is absolutely right. But more than that, Your Honors, we put in our response brief a chart, a chart that was simply illustrative of the point. We don't pretend to say that each premium was divided by three. We don't pretend to believe that. But it's illustrative of what they were charging and what Mr. and Mrs. Damps received. Isn't your problem with the Illinois Supreme Court's position saying that if there's no ambiguity in the policies, okay? Okay. And the trial court here found no ambiguity. That's correct. And the Supreme Court in that case even said, and I'm trying to find the exact language there, that if there's no ambiguity, then you don't even look at what the premiums are in the policies. I'm trying to find that language. When you said that, Your Honor, I pulled what I see as the law, and it's on page 223 of the Grisak case. Okay. You see it there? And I have what begins with, when faced with interpreting anti-stacking clauses, this court has stated that such clauses will be enforced, as written, if the clause is unambiguous and does not violate public policy. Now, it's not the public policy of having the anti-stacking statute. That is statute. You can have anti-stacking. Well, here's what I'm referring to. I'm quoting from Menke, but to repeat it again, the court has held that the payment of multiple premiums is of no consequence or the intent of the parties to the insurance contract was manifested in the clear and unambiguous language of the anti-stacking provision. I believe that I'm not suggesting you're quoting him correctly, but I don't think the end of the argument is what they're saying. Specifically, the law at 223 says you have to consider public policy. Public policy has to be considered in every statute. For instance, a statute such as allowing police to take someone into custody. The police are allowed to take people into custody. It's the courts that interpret what is the reasonableness of taking someone into custody for how long they may be in custody. That's the same thing that's going on here, Your Honors, is that they may have anti-stacking statutes, no doubt, and they may put it in their policy. They may put it in their contracts. But it's when they issue five separate declaration pages where they have one common form policy outlining and explaining what that means that when they then charge you for each premium for these things, for the coverage of underinsured and motorist coverage, it's overreaching. It's going above and beyond what they're entitled to do. They can't just charge whatever they want for as much as they want. That's just not the way it works. Public policy and the courts are here to enforce that. And that's what we say and what the trial court did find. I don't think anything was lost on trial court. This was a very long decision. The court made a decision. There was no ambiguity. Then asked State Farm to provide additional information supporting their position of why there were these additional premiums and what they meant. State Farm chose to submit a one-page paragraph that didn't outline what it was. The court then made a ruling. They then filed another motion to reconsider. And after filing a motion to reconsider and having a reply as well to that motion, the court made the same rule. And that's what was at issue. The court wanted to know, and this is a factual distinction, about what is the insured receiving from the insurer. And that's why the court asked for this additional information. And they never got it. They never got it and they never provided it. And that's why we were left with providing an illustration of what it was. It's not meant to say this is exactly what it was. And to tell you the truth, I think it's not divided by three. You get more insurance for the driver and the driver's wife than you do for passengers because they're mostly in the car. They couldn't be in the car if there were no passengers. So that, I think, is illustrative of the point. If you have any other questions about that, I would like to move on to the ambiguity. I believe this contract is ambiguous. This contract is ambiguous. And this court can rule in favor of the damses if they find that this contract is ambiguous. And I believe that this contract is more similar to the Pekin case and the Johnson case where you have these policies being issued. And there are five policies, five debt pages. It's ambiguous. And just to show how ambiguous and how difficult it is to maneuver and get through these contracts, in their own brief, State Farm misapplies the contract. There can be no more bigger proof that State Farm, in responding to an important pellet argument, misapplies their own contract. That is what happens. Now, in terms of the set-off, the set-off in this matter, the two cases that they cite are Jones and Copinus, K-A-P-I-N-U-S. Those two cases are wholly distinguishable from what happened in this case and every other case where there was found to be an ambiguity or a public policy violation where the contract was then stacked. In Jones and Copinus, there was no issue. The contract stacked not because of an ambiguity or because of a violation of public policy. In Copinus, they stacked because it was two wholly separate people. You had a driver who borrowed a car who got in an accident and his family was severely injured. They had the driver of the car's policy and they had the person who they borrowed the car from's policy. Those are two separate policies. Those two policies did apply, but they were separate and distinct. So the policies then were set off against what was happening and were set off against the amount they received from the torque fee. The problem with Copinus for citing that is that State Farm did that. Right. They stacked it. That's absolutely right. So the ambiguity was found to be because of their conduct. Somehow conduct ambiguity. In Copinus, they stacked because State Farm agreed that they stacked. So then when they agreed to stack them in Copinus and Jones, you then don't have the situation where when a contract is found to be ambiguous or violates public policy, you throw out all other limiting provisions because you must find that when the contract is ambiguous or when the contract violates public policy, you must read the contract then in favor of the insured and against the insured. So then any other limiting language is disregarded. That didn't happen in Jones or Copinus. But it did happen in Peking versus State of Gobin, which we cited, and it also happened in Johnson v. Davis. In those two cases, those were cases where, as a result of an ambiguity, contracts stacked. When they stacked, they were found to create essentially one policy of, I think Johnson was $200,000 with a set-off against the tort fees amount, which led to $150,000. If the law was as such as the State Farm posits in those cases, they would have gotten nothing as well in either Peking or Johnson, and that's just not the case. You have to, in this case, when it's ambiguous or it violates public policy, the set-off is against the whole because all other limiting language is thrown out, is disregarded. It must be disregarded. What is the specific public policy violation? Overreaching. Overreaching. So it's charging multiple premiums. Charging for duplicative coverage for drivers and technically for the named insured and for the named insured's spouse. That's overreaching. If they would have charged... I understand what you mean, but the reason I ask specifically what you're charging to be the public policy offense, that's exactly what the Gresham Court said would not be considered if the contract's unambiguous. I respectfully... I think that even if the contract's unambiguous, I don't believe that GRISAC stands for the proposition that an insurance company can charge anything they want for duplicative coverage simply because they're allowed to have anti-stacking policies. I don't believe it stands for that proposition, and that's what happened in here. And in their... Well, they said, again, that the court has held that the payment of multiple premiums is of no consequence where the intent of the parties to the insurance contract was manifested in clear and unambiguous language of the anti-stacking provision. And... I also would take note that the anti-stacking provision in it outlines that you can have anti-stacking provisions amongst single policies, where you have one policy that has five cars. If all five cars were on one policy, it makes sense that there would be no ambiguity or that you can provide anti-stacking because it's clear, it's in one policy. But the statute about limiting in the last sentence talks about amongst one policy. And in this case, we have five separate policies, five wholly separate distinct policies. In today's day and age, to think that State Farm cannot issue one policy or one common form policy for each individual with computers and everything that would outline clearly, these are your limits. You have five... In this case, Mr. Dantz, you have five policies. Your limit, no matter what, is $100,000. They don't do that. In looking at it, they say... Going through the contract, if you go step by step through the contract as State Farm tried to do... Thank you. As you go through their contract, you go to the declaration page. When you go to the declaration page, you have five declaration pages. So now what are you left to do? You're left to look at all the declaration pages that you're paying for. I'm paying for this one, this one, and this one. So I have $100,000, $100,000, $100,000, $100,000. I have $500,000 in insurance coverage. And then you then have to go to limiting instructions. And then the limiting is outlined in our brief. So with that, Your Honors, I believe that not only does the contract violate public policy by overreaching, but I also believe that this is ambiguous on its face. And based upon those few positions, you can affirm the trial court. And I also don't believe, based on the cases that we discussed here today, that there is any set-off for the entire suit. Unless you have any other questions, I'll be happy to step out. Thank you. Thank you, Mr. Monaco. Thank you very much. Mr. Stevens, rebuttal. Your Honors, I'm at a loss to understand counsel's argument regarding the statute and public policy. The statute is the best expression of public policy. A statute can never violate public policy. A statute prevents public policy.  to prevent staffing of policies. 143A2 applies, contrary to what counsel just told you, by its very language, to both multiple policies and policies that insure multiple cars under one policy. It specifically states, and we point out in our response brief, our reply brief, that the language of the statute specifically allows insurance companies that issue multiple policies to preclude staffing. Every argument that counsel has made in this case in support of stacking these policies are arguments that were accepted by the appellate court in Grayshack. And if you look at the Supreme Court decision, you can see in a paragraph in that decision, they go specifically through all of the arguments. They make five arguments. One of those arguments doesn't apply here, but they make four arguments. And of five arguments, out of four of those arguments are counsel's arguments. Each one of those arguments has been rejected by the Supreme Court. The Supreme Court has held that when you charge the same exact premium for underinsured coverage under multiple policies, that is not a violation of the statute or public policy. Now, the people didn't get more coverage, though, did they? They did, Your Honor, because that's exactly... When you look at the Grayshack opinion, you're going to see that the reason why they said it was okay is because non-family members who were occupants of those other cars were entitled to coverage or occupying that car if they were injured by an underinsured motorist. That is the... Well, wait a minute. In these policies, the passengers are covered, and that's what you're talking about. It's exactly the same thing. So there was an additional premium paid for passengers in the multiple policies. But also they paid more money for the named insured and the relatives. They paid additional coverage for the named insured and relatives on each one of those policies when they already had coverage for those people, and they're not getting more coverage. Isn't that right? No, it's not right. How is that not right? I'll tell you why, Your Honor, because this is in our response brief and actually in our initial brief. The uninsured motorist statute, which is different than the uninsured underinsured motorist statute, which is 143A, specifically says there is no coverage for uninsured motorists. There's no uninsured motorist coverage if the insured, the named insured, is occupying a vehicle owned by him or a vehicle furnished or available for his regular use if it's not the vehicle described under that policy. Now, are you talking about uninsured or underinsured? I'm talking about uninsured. Uninsured. What about the underinsured? But the reason why that's important is because... Because I was talking about, I think, underinsured for the named insured and for the relatives. Your Honor, and I understood that. There's two parts to this. The second part is under 143A-2, and according to the Supreme Court in Seltzer versus Comfrey Mutual, 143A and 143A-2 have to be read in every materia. They have to be read together. And in 143A-2, it says that you can't issue a policy. No insurance company can issue a policy for uninsured motorist coverage unless there's underinsured motorist coverage in the exact same amount. And so, in other words, if you take $100,000 of uninsured coverage, you have to take $100,000 of underinsured coverage. There's a case, Your Honor, that was recently decided by the Supreme Court last year, which is... Well, I guess it is a fact, is it not, that they paid premium money for the passengers, but they also paid additional premium money for the underinsured coverage for the named insured and relatives under a mortgage loan policy. That's true, but it was also true in Grayshack. It's true, but the distinguished Supreme Court said that these policies did provide additional coverage, and the additional coverage they provided was coverage for non-family members who occupied the specific cars. That's exactly the situation here. Thank you very much. Thank you, Mr. Stevens. We thank both of you for your argument this morning. We'll take the matter under advisement, and we'll issue a written decision as quickly as possible. Thank you.